IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Phillip Tate,                                            :

                Plaintiff                :          Civil Action 2:06-cv-00627

    v.                                                   :          Judge Sargus

Trina Bell, *et al.*,                                 :          Magistrate Judge Abel

              Defendants            :


**ORDER**

Plaintiff Phillip Tate, a prisoner at Trumball Correctional Institution ("TCI") brings this action under 42 U.S.C. § 1983 alleging that defendants Trina Bell, Dietary Operations Manager, and Dr. Savage, Acting Medical Director, have failed to accommodate his food allergies and retaliated against him for filing grievances in violation of the First, Eighth, and Fourteenth Amendments. This matter is before the Court on plaintiff Phillip Tate's April 30, 2007 motion for reconsideration of the Magistrate Judge's April 13, 2007 Report and Recommendation (doc. 33) that recommended that defendants' motion for summary judgment be granted. As required by 28 U.S.C. §636(c), the Court will make a *de novo* review of those portions of the Report and Recommendation to which the plaintiff specifically objects.  Upon *de novo* review, the Court **OVERRULES** the plaintiff's objections.

Allegations in the Complaint. The complaint alleges that Tate has food allergies to seafood and vinegar. He maintains that during the past twenty-one years of incarceration, he has requested and obtained medical orders permitting food allergy accommodation for seafood and vinegar. Compl. at ¶¶ 13-25. The complaint alleges that on May 2, 2005, Michelle Eberlin, the

Warden of the Belmont Correctional Institution, acknowledged the need for staff to comply with plaintiff's diet. ¶ 20. On May 31, 2005, after reviewing plaintiff's files, the Ross Correctional Institution warden directed Dr. James Coulter to write a medical food allergy order. ¶ 21. On August 12, 2005, the Chief Inspector on Appeal determined that plaintiff's grievance had merit. ¶ 22. The complaint further alleges that defendant Trina Bell and Dr. Savage conspired with one another to discontinue plaintiff's medical diet in retaliation for his successful grievance by manipulating an alleged discrepancy in his file. ¶ 23.

On June 1, 2006, plaintiff was transferred back to TCI with documentation verifying plaintiff's food allergies. ¶ 26. On June 27, 2006, plaintiff sent a kite complaint to TCI food manager, Michele Reamensndyer concerning the assistant food manager's refusal to accommodate his diet restrictions. ¶ 29. On July 5, 2006, Dr. Kline allegedly notified plaintiff that Reamensnyder had successfully persuaded defendants Bell and Savage to circumvent his medical diet. ¶ 29. Plaintiff was told that no medical dietary accommodation would be prescribed until plaintiff underwent allergy testing. ¶ 30.

Plaintiff maintains that from 1985 to 1996, ODRC did not have a food allergy policy, and plaintiff's food allergies were accommodated. ¶ 32. On February 6, 1997, ODRC implemented a Food Allergies Policy. ¶ 33.

Plaintiff has had to forgo entire meals because vinegar is an ingredient in the majority of the food items. ¶ 41. The complaint asserts that plaintiff's life is in danger due to his exposure to vinegar and his nutrition deficiency. ¶ 43. Other inmates with food allergies have been treated differently than plaintiff. ¶ 45.

2

Plaintiff's Objections. Plaintiff Tate objects to the Magistrate Judge's Report and Recommendation on the basis that he never had the opportunity to obtain discovery in this case. Plaintiff maintains that defendants unfairly withheld plaintiff's medical files. Plaintiff also argues that the Magistrate Judge failed to consider evidence there was no testing, including the RAST test, that would detect an allergy to acetic acid, which constituting a genuine issue of fact. Plaintiff contends that the Magistrate Judge improperly engaged in weighing of the evidence to reach his conclusion.

Plaintiff's Affidavit. Plaintiff Tate provided a sworn affidavit detailing the history of ODRC's treatment and accommodation of his alleged food allergy. Tate reported that doctors at the Southern Ohio Correctional Facility ("SOCF") referred plaintiff to Dr. McNeil at the Ohio State University Allergy Clinic for treatment of his allergic reactions to dust, pollen, ragweed, and grass. Dr. McNeil performed a "skin scratch test" to test for allergies to peanuts, chocolate and seafood. Plaintiff maintains that this test demonstrated that he was allergic to fish, although it had also been previously known, documented and accommodated by defendants.

Plaintiff Tate further asserts that he was hospitalized for exposure to vinegar, and Dr. Linda Smith informed him that there was no test for determining whether he was allergic to vinegar.  Tate was removed from a food service job because the steam tables were cleaned with vinegar. When Tate was transferred to Mansfield Correctional Institution ("MANCI") in 1993 and the Allen Correctional Institution ("ACI") in 1997, where he continued to have his food allergy accommodated.

In July 2002, plaintiff was transferred to Marion Correctional Institution ("MCI"), and Tate asserts that the food service staff did not want to accommodate his diet upon his arrival. According to plaintiff, Dr. Mendel Reid, MCI's medical officer, and Alice Cain, R.M. reviewed

3

his files and interviewed Tate. Tate maintains that Dr. Reid and Cain found references in his

medical file regarding his reactions to vinegar, treatment, and diet orders. Tate further stated that

Dr. Reid told him that:

> [W]hen a patient's history, diet diary, or elimination diet suggests a specific food
> allergy, a doctor will use tests that can more objectively measure an allergic
> reaction. However, Dr. Reid also made clear that even positive or negative test
> results do not necessarily make the diagnosis or confirm the allergy one way or the
> other. Dr. Reid expressed that tests are generally utilized for unsuspecting patients
> who have no idea that whatever symptoms they are experiencing derives from food
> allergies. Dr. Reid stated that in my case and with the information that he and
> preceding physicians evaluated, that the focus would be upon dietary avoidance
> since no test existed for acetic acid as an allergy. A diet order and report was then
> prepared by dietic (sic) tech Sharon Elswick confirming that I met all DRC diet
> prescription criteria.

Tate Aff. ¶ 13.

On May 31, 2005, plaintiff was transferred to the Ross Correctional Institution, where the

food service and medical staff refused to abide by plaintiff's dietary restrictions. As a result

plaintiff went without his dietary accommodations for nearly a year. On June 1, 2006, plaintiff

was transferred to Trumball Correctional Institution ("TCI"), where Dr. J. Kline prescribed him a

food allergy accommodation diet. While at TCI, plaintiff sent a kite to the TCI food manager,

Michele Reamensnyder, complaining that Rosa Hill-Simpson had refused to accommodate his

food allergies. Ms. Reamensnyder allegedly cancelled the medical diet order unilaterally and

enlisted a diet technician, Karen Schmader, to inspect his medical file. A new diet order was

entered, but, according to plaintiff, Ms. Reamensnyder cancelled the order based on a new policy

being promulgated by Dr. Savage.

Plaintiff had also been informed by a surgeon at the Ohio State University, that he should

not eat excessive amounts of soybean because it impacted his PT/INR blood levels and placed

him at risk because he takes a blood thinner. Further, Tate asserts that he has a documented

4

allergy to fish, yet defendants fail to accommodate him. Finally, plaintiff asserts that he has refused RAST testing because of his belief that it will not accurately determine whether or not he is allergic to vinegar. He maintains that his medical file, which was prepared by ODRC physicians, provides adequate documentation of his allergic reactions and treatments, but these records disappeared after he filed a complaint about staff noncompliance.

Summary Judgment. Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting*

*Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted).  Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)).  As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

    <u>Discussion: Conditions of Confinement</u>.    The Magistrate Judge correctly outlined the law governing an Eighth Amendment claim challenging the conditions of confinement. An Eighth Amendment claim challenging the conditions of confinement contains and objective and a subjective component.  To demonstrate the objective component the plaintiff must demonstrate that he has been deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. *Farmer v.  Brennan*, 511 U.S. 825 (1994).

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," *Rhodes, supra,* 452 U.S., at 347, 101 S. Ct., at 2399, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson* [*v. Seiter,*
> 501 U.S. 294, 298 (1991)] (quoting *Rhodes, supra,* 452 U.S., at 347, 101 S. Ct., at 2399).

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "In assessing claims that conditions of confinement are cruel and unusual, courts must bear in mind that their inquiries 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" *Rhodes v. Chapman*, 452 U.S. 337 (1981) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

    ODRC policy 68-MED-05 address food allergy accommodations and provides a procedure for determining the need for an official diet order.

V.   POLICY: It is the policy of the Ohio Department of Rehabilitation and Correction (ODRC) that special diets for food allergies or intolerance are rarely indicated and are ordered only when medically necessary. Inmates are to be educated to avoid any offending food. ODRC does not recognize food preferences.

VI.   PROCEDURES

* * *

B.   Treatment of an adverse reaction

   1.   Refer the inmate to the institutional dietetic technician for education about eliminating the food item and/or ingredient from the diet.

   2.   An inmate must have a medically documented food allergy before a special diet may be ordered. An inmate's statement that he/she has an allergy to a certain food is not appropriate or sufficient documentation. ODRC does not honor individual food preferences.

C.   Review of Documentation: The following documentation should be reviewed to determine the need for an official diet order:

   1.   Admission records: indication of any food sensitivity or intolerance

   2.   Medical history: causative food product, length of time from food exposure to reaction, type of reaction (symptoms), cause of reaction, and the length of reaction

   3.   Medical records: Documentation of any reaction in the file, past allergy testing by a physician, or any other records that would indicate a food sensitivity or intolerance.

   4.   DRC does not routinely provide allergy testing. Exceptions may be determined on an individual basis.

   5.   Final consideration for testing of an inmate will rest with the Department Medical Director.

D.   The physician shall write an official diet order for any inmate exhibiting a food sensitivity or food intolerance, if it is deemed medically necessary, in accordance with the criteria outlined in Section VI.C.

Defendants' position is that plaintiff's file did not contain adequate documentation for the need of an accommodation, and in order to substantiate the need, it is necessary for plaintiff to undergo allergy testing provided by ODRC. However, plaintiff has refused to do so. Defendants contend that without the results of allergy testing indicating the need for a food allergy accommodation, plaintiff cannot demonstrate that he has been deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

8

The Magistrate Judge noted that absent from plaintiff's affidavit is any specificity regarding instances of past or future harm. Although plaintiff states he was hospitalized because of allergic reactions to food, he does not specify what symptoms he experiences when he has an allergic reaction. While it is a clear that an allergic reaction could constitute a serious medical need, Tate has not provided the Court with evidence demonstrating that his allergies put him at substantial risk of serious harm. Plaintiff did not provide any evidence with respect to the length of time from food exposure to reaction, type of reaction or symptoms, and the length of reaction. Plaintiff simply contends that he is allergic to fish and vinegar and that the defendants have previously recognized and accommodated his allergies. He maintains that the documentation in his medical records has been removed, but he does not detail what that alleged documentation contained to demonstrate that defendants have been deliberately indifferent to a serious medical need.

Defendants requirement that Tate undergo allergy testing before changing his diet is not unreasonable. Even though such testing had been done in the past, medical conditions can change over time.

Because plaintiff has failed to provide evidence from which the finder of fact could conclude that defendants have been deliberately indifferent to a serious medical need, defendants' motion for summary judgment is GRANTED with respect to plaintiff's claim based on the conditions of his confinement.

Retaliation. The Magistrate Judge also correctly outlined the law governing a claim for retaliation based on the First Amendment. A claim for a First Amendment retaliation has three elements: the plaintiff engaged in protected conduct, the defendant took an adverse action against the plaintiff, and this adverse action was taken because of the protected conduct. *Thaddeus-X, et.*

9

*al. v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Magistrate Judge correctly concluded that Tate satisfied the first element because a prisoner has a constitutional right to file grievances against prison officials. *Smith v. Campbell*, 250 F.3d 1032, 1037 (2001) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

The Magistrate Judge also found that plaintiff satisfied the second element of a First Amendment retaliation claim, which is a showing that an adverse action was taken. *Thaddeus-X*, 175 F.3d at 396. As noted by the Magistrate Judge, a person of ordinary firmness would likely be deterred from exercising his rights if he knew he risked losing his food allergy accommodation altogether if he complained about a particular incident of noncompliance with the accommodation.

Finally, Tate must come forth with evidence showing that there is a causal connection between the protected conduct, complaining about noncompliance with his food allergy accommodation, and the adverse action. "[T]he plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399. Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Id.*" *Smith, Jr. v. Campbell*, 250 F.3d 1032, 1038 (2001).

The Magistrate Judge concluded that even though defendants did not subject Tate to testing when he complained in the past, it was not unreasonable for defendants to follow neutral prison regulations and require Tate to undergo allergy testing to demonstrate his present need for a medical accommodation. Medical conditions may change over time, and medical testing is important to providing good medical care. Therefore, defendants' motion for summary judgment is GRANTED with respect to plaintiff's claim based on retaliation.

<u>Conclusion.</u> For the reasons stated above, the Court ADOPTS the Magistrate Judge's April 13, 2007 Report and Recommendation, and defendants' February 1, 2007 motion for summary judgment (doc. 29) is  GRANTED. Plaintiff Phillip Tate's April 30, 2007 motion for reconsideration of the Magistrate Judge's Report and Recommendation (doc. 33) is DENIED. The Clerk of Court is DIRECTED to enter JUDGMENT for defendants.

7-2-2007

Edmund A. Sargus, Jr.
United States District Judge